IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
(GALVESTON DIVISION)

| | |
|---|---|
| ROSAMARIA GOMEZ RODRIGUEZ, Individually and as Personal Representative of the Estate of RODOLFO RODRIGUEZ, Plaintiff, <br><br> v. <br><br> UNION PACIFIC RAILROAD COMPANY, INDIVIDUALLY, AND AS SUCCESSOR-IN-INTEREST TO SOUTHERN PACIFIC TRANSPORTATION COMPANY, Defendant. | CASE #: 3:19-cv-00268 |

**DEFENDANT'S MOTION TO EXCLUDE
THE CAUSATION OPINION OF DANIEL CATENACCI, M.D.**

Defendant, UNION PACIFIC RAILROAD COMPANY ("Union Pacific" or "Defendant"), files this Motion to Exclude the Causation Opinion of Daniel Catenacci, M.D, and in support, shows the Court as follows:

**I.    BACKGROUND**

Plaintiff brings this claim against Union Pacific Railroad Company (Union Pacific) under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, claiming Decedent Rodolfo Rodriguez was exposed to various "toxic substances" during his railroad employment. (Doc. 1, Complaint). Plaintiff seeks compensatory damages under the FELA for Decedent's alleged colon cancer. (Doc. 1).

To support her allegations, Plaintiff disclosed Daniel Catenacci,, M.D. as a specific causation expert. (Ex. A, Doc. 23, Plaintiff's Expert Disclosures). Dr. Catenacci opined that

Decedent "was exposed to asbestos during his time working at Southern Pacific Railroad Company. Asbestos is a known risk factor for cancer, and more likely than not was contributory to his development of his colorectal cancer." (Ex. B, Doc. 23-2, Catenacci Report at 11). However, the epidemiology Dr. Catenacci bases his causation opinion upon is not settled and fails to satisfy the requirements of general causation. Moreover, Dr. Catenacci has no quantified data that the alleged occupational exposure to asbestos was deleterious. *Id.*

Dr. Catenacci's opinions are flawed and his methodology, when examined closely, lacks scientific and factual support, requiring exclusion under Fed. R. Evid. 702, 703, 705, and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). First, the epidemiology relied upon by Dr. Catenacci is insufficient to establish general causation. *See* Ex. B, page 12 (list of references). A finding of a mere association is insufficient to support a specific causation opinion as a matter of law. *See Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 379 (5th Cir. 2010) (holding that expert testimony on causation was inadmissible where the studies on which the expert relied established a mere association).

Second, Dr. Catenacci does not rely on or examine the nature or extent of alleged asbestos exposure, only rather that it allegedly existed in Decedent's tenure with the railroad. Dose response is an essential element of Plaintiff's burden of proof on the admissibility of medical causation evidence. *See Mattis v. Carlon Elec. Prod.*, 295 F.3d 856, 860 (8th Cir. 2002); *Savage v. Union Pac. R.R. Co.*, 67 F. Supp. 2d 1021 (E.D. Ark. 1999).

Third, Dr. Catenacci did not use a reliable methodology to establish that Decedent's railroad work did in fact cause his colon cancer (specific causation).[1] Quite simply, he failed to

---

[1] A differential diagnosis is a technique to determine a diagnosis while differential etiology is a term used to describe the process for determining the cause of an ailment. *Johnson v. Mead Johnson & Co.*, 754 F.3d

DEFENDANT'S MOTION TO EXCLUDE THE CAUSATION OPINION OF DANIEL CATENACCI, M.D.                                                                                                                                                                             Page 2

adequately rule out Decedent's smoking, obesity and diabetes as the cause of his colon cancer, all of which are admitted and known risk factors. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665 (6th Cir. 2010); *Bowers v. Norfolk Southern Corp.*, 537 F.Supp.2d 1343 (M.D. Ga 2007).

For these reasons, Dr. Catenacci's causation opinion is inadmissible and must be excluded from these proceedings.[2]

## II.     LEGAL POSITION

Fed. R. Evid. 702, as interpreted by the Supreme Court in *Daubert*, 509 U.S. 579, governs expert testimony. Under Rule 702, courts must ensure that a proffered expert is qualified by his knowledge, skill, experience, training, or education before that person may testify as an expert. "District courts are to perform a 'gatekeeping' function and insure that proffered expert testimony is both relevant and reliable." *Dancy v. Hyster Co*., 127 F.3d 649, 652 (8th Cir. 1997).

To be reliable, the party offering the expert "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Smith v. Bubak*, 643 F.3d 1137, 1140 (8th Cir. 2011) (citing

---

557, 560 fn.2 (8th Cir. 2014). Union Pacific will use the term differential etiology although some cases refer to the process as a differential diagnosis. A differential etiology requires both ruling in potential causes and ruling out potential causes to identify the most likely cause(s) of the disease. *Glastetter v. Novartis Pharms. Corp*., 252 F.3d 986, 989 (8th Cir. 2001). The so-called "relaxed standard of causation" under FELA still requires an expert applying a differential diagnosis to "rule out" alternative causes as the sole cause. *Claar v. Burlington N. R.R*., 29 F.3d 499, 502 (9th Cir. 1994) (affirming exclusion of FELA causation expert for failing to rule out other possible causes).

[2] To present a *prima facie* case under FELA, the employee-plaintiff must show that: the railroad was negligent; and that negligence caused, in whole or in part, the injury for which he seeks compensation. 45 U.S.C. § 51; *Monheim v. Union Rail Co.*, 996 F.Supp.2d 354, 361 (W.D. Pa. 2014), *Van Gorder v. Grand Trunk W.R.R.*, 509 F.3d 265, 269 (6th Cir. 2007). At the summary judgment stage, "the test of a jury case is simply whether the proofs justify with reason the conclusion." *Monheim,* F.Supp.2d at 361 (*citing CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692, 131 S.Ct. 2630, 180 L.Ed.2d 637 (2011)). *See also Porte v. Illinois Cent. R.R. Co.*, No. 17-5657, 2018 WL4386107, at *2 (E.D. La Sept. 14, 2018) (*citing Smith v. Med. & Surgical Clinic Ass'n*, 118 F.3d 416, 419 (5th Cir. 1997)). In short, Plaintiff's FELA claim cannot survive without admissible evidence of causation and this case should be dismissed if this Court grants this motion. Fed. R. Civ. Proc. 56.

*Daubert*, 509 U.S. at 589-90). To satisfy this requirement, the proponent must show that the expert's "reasoning or methodology was applied properly to the facts at issue." *Id*.

### A. The FELA Does Not Change The *Daubert* Analysis.

It is well-established through numerous federal courts that the FELA's modified causation standard does not affect *Daubert*. *See, e.g*., *Schulenberg v. BNSF Ry. Co*., 911 F.3d 1276, 1283 (10th Cir. 2018); *Brown v. Burlington N. Santa Fe Ry*., 765 F.3d 765, 772 (7th Cir. 2014); *Granfield v. CSX Transp.,Inc*., 597 F.3d 474, 486 (1st Cir. 2010); *Wills v. Amerada Hess Corp*., 379 F.3d 32, 47 (2d Cir. 2004) (holding, in a Jones Act case,[3] that plaintiff "fails to appreciate that the standards for determining the reliability and credibility of expert testimony are not altered merely because the burden of proof is relaxed"); *see also Collins v. BNSF,* 4:17-CV-3572, 2019 WL 1040952 (S.D. Texas March 5, 2019).

### B. *Daubert* Requires a Proposed Expert's Methodology to Be Scientifically Reliable

Under *Daubert*, "a district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Rosen v. Ciba-Geigy Corp*., 78 F.3d 316, 318 (7th Cir. 1996). "No matter how good experts' credentials may be, they are not permitted to speculate." *Tamraz v. Lincoln Elec. Co*., 620 F.3d 665, 671 (6th Cir. 2010) (internal quotations omitted). "[T]he courtroom is not the place for scientific guesswork, even of the inspired sort." *Id*. (quoting *Rosen*, 78 F.3d at 319).

Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case. *See Concord Boat Corp. v. Brunswick Corp*., 207 F.3d 1039,

---

[3] The Jones Act, which "allows a seaman to recover for injury suffered during the course of his employment, provides 'seaman rights that parallel those given to railway employees under the FELA.'" *Martin v. Harris*, 560 F.3d 210, 216 (4th Cir. 2009).

1056-57 (8th Cir. 2000). The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence. *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert*, 509 U.S. at 592).

Plaintiff in this case cannot meet this burden of proof and Dr. Catenacci's causation opinion should be excluded from these proceedings.

C. **The Epidemiology Relied Upon by Dr. Catenacci Fails to Establish General Causation.**

The relevant burden of proof for admission of medical causation evidence is causation, not *association*, which are separate and distinct concepts in epidemiologic studies. *Collins v. BNSP Ry. Co.*, No. 4:17-cv-3572, 2019 WL 2297293 (S.D. Tex. Mar. 5, 2019). And evidence of association alone is not sufficient for admissibility. *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 379 (5th Cir. 2010) (holding that evidence of association is insufficient for a reliable expert opinion); *Anderson v. Bristol Myers Squibb Co.*, No. Civ. A. H-95-0003, 1998 U.S. Dist., 1998 WL 35178199, at *11-12 (S.D. Tex. Apr. 20, 1998) (noting that the fact that studies are scientifically valid for an association determination does not mean they are scientifically valid for a causation determination).

Here, Dr. Catenacci relies on research finding "associations" at best, and includes only slightly "elevated" relative risk in the data. (Ex. B, p. 7-9).  The cited research includes no definitive consistent data finding a causal relationship to support causation as defined by Rule 702 and the decisional caselaw.  From this research, and as explained below, with no qualitative dose data establishing that the alleged exposure is deleterious, Dr. Catenacci concludes that Decedent's alleged occupational asbestos exposure caused his colon cancer. Such reasoning fails to satisfy the tenants of *Daubert* and the Federal Rules of Evidence.

First, Dr. Catenacci admits that the International Agency for Research on Cancer (IARC) merely found that asbestos exposure has an *association* with colon cancer, in stark contrast to IARC's finding *causation* between asbestos exposure and mesothelioma, lung, larynx, ovary and lung cancer. Ex. A, p. 7.[4] IARC's failure to find a causal connection is significant. As Courts in this Circuit have cautioned:

> Regulatory and advisory bodies such as IARC, OSHA and EPA utilize a "weight of the evidence" method to assess the carcinogenicity of various substances in human beings and suggest or make prophylactic rules governing human exposure. This methodology results from the preventive perspective that the agencies adopt in order to reduce public exposure to harmful substances. The agencies' threshold of proof is reasonably lower than that appropriate in tort law, which "traditionally make[s] more particularized inquiries into cause and effect" and requires a plaintiff to prove "that it is more likely than not that another individual has caused him or her harm."

*Allen v. Pa. Eng'g Corp.,* 102 F.3d 194, 198 (5th Cir.1996) (quoting *Wright v. Williamette Indus., Inc.,* 91 F.3d 1105, 1107 (8th Cir.1996)). In other words, IARC is extraordinarily proactive and its failure to find a *causal* effect between asbestos exposure and colon cancer at a "threshold of proof reasonably lower than that appropriate in tort law" is conclusive that there is insufficient evidence of causation between colon cancer and asbestos exposure to support any finding of general causation. *See id.*

This is further demonstrated by Dr. Catenacci's concession that while several studies find an association or relationship between colon cancer and asbestos exposure, some studies find none. Ex. B, p. 7. Likewise, the relative risk in the research cited by Dr. Catenacci is very low, i.e. 1.4, 1.16. 1.07, 1.14. *Id.* Some courts require opinions on general causation to be grounded in studies demonstrating a statistically significant relative risk greater than 2.0. *See Daubert,* 43 F.3d at 1321

---

[4] *See also https://www.cancer.org/cancer/cancer-causes/asbestos.html,* where the American Cancer Society similarly fails to find asbestos exposure as either a cause or even risk factor to colon cancer.

(requiring a relative risk of greater than 2.0 for an epidemiology study to show causation under a preponderance standard); *Siharth v.. Sandoz Pharms. Corp.,* 131 F.Supp.2d 1347, 1356 (N.D.Ga.2001) ("[I]n the world of epidemiology, the threshold for concluding that an agent was more likely than not the cause of a disease is a relative risk greater than 2.0").

Such medical causation opinions based on insufficient epidemiologic data fail to satisfy the burden of admissibility in this Court and should be excluded. *In re: Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig*., 858 F.3d 787, 797-99 (3d Cir. 2017) (excluding general causation opinions because the expert did not reliably analyze the body of evidence or adequately explain how the epidemiologic research was consistent, strong and reproducible ); *see also Claar v. Burlington Northern R. Co.*, 29 F.3d 499 at 502-03 (9th Cir. 1994) (holding that "[c]oming to a firm conclusion first and then doing research to support it is the antithesis of this method [to diagnose the causes of plaintiffs' injuries]").

Dr. Catenacci's causation opinion regarding Decedent's alleged asbestos exposure is not supported by sufficient epidemiology and there is no finding of general causation that asbestos causes colon cancer. As a result, Dr. Catenacci's causation opinion must be excluded from these proceedings.

### D. **Dr. Catenacci Did Not Attempt To Ascertain the Nature of Decedent's Alleged Asbestos Exposure**.

Dr. Catenacci's specific causation opinions are also unreliable because he made no attempt to identify the nature and/or any level of alleged asbestos exposure in Decedent's brief railroad work.[5] (Ex. B.)  Rather, Dr. Catenacci relies on testimony that asbestos was allegedly present in

---

[5] This is true even though air sampling and data was provided in discovery and as Defendant's expert explains there is no *exposure* from performing the tasks alleged to have used asbestos-containing materials, including when using the magic rope. (Doc. 26, 5-6.)

DEFENDANT'S MOTION TO EXCLUDE THE CAUSATION OPINION OF DANIEL CATENACCI, M.D.                                                                                                                                                  Page 7

Decedent's occupational environment. *Id.* This is insufficient under a *Daubert* and Rule 702 analysis.

### *Evidentiary Standards to Show General Causation*

To satisfy the burden of admissibility in a FELA toxic tort case, a plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally before he or she may recover. *Wright v. Willamette Indus., Inc.*, 91 F.3d 1105, 1106 (8th Cir. 1996). As it applies to alleged asbestos exposure, the "every exposure" or "every exposure above background" theory "represents the viewpoint that, because science has failed to establish that any specific dosage of asbestos causes injury, every exposure to asbestos should be considered a cause of injury." *Yates v. Ford Motor Co.*, 113 F.Supp.3d 841, 848 (E.D. N.C. 2015). This theory is largely rejected and the majority of courts have excluded expert testimony based on this theory finding that the theory is unreliable as it is not supported by sufficient facts or data, including Courts in the Fifth Circuit. *See Bell v. Foster Wheeler Energy Corp.*, No. 15-6394, 2016 WL 5847124 (E.D. La. Oct. 6, 2016); *Vedros v. Northrop Grumman Shipbuilding, Inc.*, 119 F.Supp.3d 556, 563 (E.D. La. 2015); *Comardelle v. Pa. Gen. Ins. Co.*, 76 F.Supp.3d 628, 633–35 (E.D. La. 2015); *Yates*, 113 F.Supp.3d at 848; *Krik v. Crane Co.*, 76 F.Supp.3d 747, 749–50 (N.D. Ill. 2014); *Sclafani v. Air & Liquid Sys. Corp.*, No. 12-3013, 2013 WL 2477077, at *5 (C.D. Cal. May 9, 2013); *Smith v. Ford Motor Co.*, 08-630, 2013 WL 214378, at *2 (D. Utah Jan. 18, 2013); *Henricksen v. ConocoPhillips Co.*, 605 F.Supp.2d 1142, 1166 (E.D. Wash. 2009); *Dempster v. Lamorak Insurance Co.*, no. 20-95, 2020 WL 5552633 (E.D. La. Sept. 16, 2020). In other words, the mere alleged existence of asbestos is insufficient to establish a reliable expert causation opinion and an expert must demonstrate the alleged asbestos exposure was deleterious.

An FELA plaintiff "bears the burden of presenting reliable evidence from which 'a jury could conclude a probable or likely *causal* relationship as opposed to merely a possible one.'" *Savage*, 67 F. Supp. 2d at 1021 (internal quotations omitted) (emphasis added). *See also Byrd v. Union Pacific Railroad Co.*, 453 F.Supp.3d 1260 (D. Neb. 2020) (excluding expert in FELA toxic exposure action because expert could not demonstrate actual levels of exposure); *see also Moore v. Ashland Chemical Inc.*, 151 F.3d 269 (5th Cir. 1998).

In *Savage v. Union Pacific*, 67 F.Supp.2d 1021 (E.D. Ark. 1999), these failures foreclosed the admissibility of proffered expert's testimony, because his testimony amounted to nothing more than "an educated guess." 67 F. Supp. 2d at 1035. In reaching this holding, the court in *Mitchell v. Gencorp*, 165 F.3d 778 (10th Cir. 1999), explained:

> We believe a plaintiff must prove the level of the exposure using techniques subject to objective, independent validation in the scientific community. At a minimum, the expert should include a description of the method used to arrive at the level of exposure and scientific data supporting the determination. The expert's assurance that the methodology and supporting data is reliable will not suffice. <u>Scientific knowledge of the harmful level of exposure to a chemical plus knowledge that plaintiff was exposed to such quantities are minimal facts necessary</u> to sustain the plaintiff's burden in a toxic tort case. Absent supporting scientific data, Mitchell's estimates and Herron's conclusions are little more than guesswork. Guesses, even if educated, are insufficient to prove the level of exposure in a toxic tort case.

*Savage*, 67 F. Supp. 2d at 1034-35 (quoting *Mitchell*, 165 F.3d at 781) (internal citations omitted, emphasis added).  *See also Junk v. Terminix Int'l Co., Ltd. P'ship*., 628 F.3d 439 (8th Cir. 2010); *Johnson v. Arkena, Inc.*, 685 F.3d 452 (5th Cir. 2012).

Here, Dr. Catenacci not only lacks the necessary epidemiology establishing that asbestos exposure can cause colon cancer, he failed to demonstrate an acceptable degree of medical certainty that the Decedent's alleged asbestos exposure is anything more than background exposure.  Stated another way, Dr. Catenacci has no evidence of the nature and quantities of

alleged asbestos to which Decedent was allegedly exposed in order to determine if this exposure was harmful, let alone specifically caused Decedent's colon cancer.

Dr. Catenacci neither contends, nor is there evidence, that *any* exposure to asbestos causes colon cancer as such theories have been clearly rejected by medicine, science and the Courts. Rather Dr. Catenacci and all the proffered experts in this case rely on research and literature examining the effects of certain types of asbestos exposure and believed outcomes. In order to reliably complete the analysis, there must be evidence that the nature of this alleged exposure is beyond its mere existence. Because this data and analysis is completely lacking, Dr. Catenacci's causation opinion is speculative.

Dr. Catenacci's method requires that he presume – without support and in fact evidence to the contrary – that Decedent was exposed to deleterious levels of asbestos while working at the railroad. Dr. Catenacci's assumptions are improper and render his opinions unreliable under a Rule 702 determination. Plaintiff cannot meet his burden of proof on this necessary element and Dr. Catenacci's causation opinion testimony should be excluded from these proceedings.

### E. **Dr. Catenacci Failed To Properly Rule Out Decedent's Smoking, Obesity and Diabetes To Reach His Specific Causation Opinion**.

A differential etiology (or diagnosis)[6] is an accepted method to address questions of specific causation where there may be several causes to the relevant health outcome under the Federal Rules of Evidence. *Porte v. Ill. Cent. R.R. Co.*, No. 17-5657, 2018 U.S. Dist. 2018 WL 4404063, at *10 (E.D. La. Sept. 12, 2018) (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 758 (3d Cir. 1994) (noting that differential etiology is a "technique that has widespread acceptance in the medical community ... that involves assessing causation with respect to a particular

---

[6] *See* note 1.

individual")). "In performing a differential diagnosis, a physician begins by 'ruling in' all scientifically plausible causes of the plaintiffs injury. The physician then 'rules out' the least plausible causes of injury until the most likely cause remains"); *Glastetter v. Novartis*, 252 F.3d 986, 989 (8th Cir. 2001). Even if an expert testifies to using a differential methodology, the court's task is to look beyond such a label and determine if the proffered causation opinion is scientifically reliable - that is, supported by adequate validation to render it trustworthy.

### *Plaintiff's Specific Causation Testimony Fails to Sufficiently Rule Out Other Causes*

As explained above, Dr. Catenacci did not reliably rule *in* Decedent's alleged occupational exposures as potential causes of his cancer. But an additional glaring problem is Dr. Catenacci's failure to sufficiently rule *out* Decedent's smoking, obesity and diabetes as causes of his colon cancer despite admitting these are <u>known</u> risk factors. Ex. B, p. 4. Unlike asbestos, these risk factors are also generally accepted by the medical and scientific communities, including the American Cancer Society.[7]

Under a Rule 702 and *Daubert* analysis, Dr. Catenacci cannot simply ignore these other known risk factors to conclude Decedent's colon cancer was caused by his alleged asbestos exposure during his brief railroad career. "[W]hen smoking is raised by the defendant as a possible sole cause, differential etiology requires a medical professional to consider whether smoking alone was the cause." *Byrd v. Union Pacific Railroad Co.*, 453 F.Supp.3d 1260 (D. Neb. 2020); *Phlypo v. BNSF Ry. Co.*, No. 4:17-CV-566-BJ, 2019 WL 2297293, at 1 (N.D. Tex. Mar. 27, 2019). Dr. Catenacci's failure to adequately rule out other known and well-accepted causes renders his causation opinion unreliable and inadmissible. *See also Moore v. Ashland Chem., Inc.*, 151 F.3d

---

[7] http://cancer.org.

269, 279 (5th Cir. 1998)(affirming district court's finding that plaintiff's causation theory was unreliable because, among other reasons, the expert did not sufficiently account for plaintiff's personal habits and medical history as alternative explanations for the disease). *Claar v. Burlington N. R.R.*, 29 F.3d 499, 502 (9th Cir. 1994) (affirming exclusion of FELA causation expert for failing to rule out other possible causes). *Wills v. Amerada Hess Corp.* 379 F.3d 32, 47 (2d Cir. 2004).

"[S]imply claiming that an expert used the 'differential diagnosis' method is not some incantation that opens the *Daubert* gate." *Bower v. Norfolk* Southern, 537 F.Supp.2d 1343, at 1360 (M.D. Ga 2007). Stating a potential case was ruled out, does not by itself answer the reliability question but prompts assessing whether: (1) the expert reliably ruled in the possible causes, and (2) whether the expert reliably ruled out the rejected causes. *Id.* If the court answers "no" to any of these questions, the court must exclude the ultimate conclusion reached. *See Best v. Lowe's Home Ctrs., Inc.,* 563 F.3d 171, 179 (6th Cir. 2009).

Dr. Catenacci's made inadequate efforts to "rule in" asbestos exposure as a possible cause and he did not attempt to "rule out" Decedent's smoking, obesity and diabetes as the cause of his colon cancer. Accordingly, his specific causation opinions are based on speculation, not a valid methodology. This testimony does not satisfy Rule 702 and should be excluded.

### III.  CONCLUSION

Dr. Catenacci has not employed "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Dr. Catenacci fails to rely on legally sufficient epidemiology and has no admissible evidence of general causation, i.e., that alleged asbestos exposure can cause colon cancer. Moreover, Dr. Catenacci relies on the mere presence of the alleged asbestos exposure and ignores

evidence of the nature of that the alleged exposure did not exist in the claimed tasks. He therefore cannot reliably opine the alleged asbestos exposure was hazardous or the cause of Decedent's colon cancer. Finally, Dr. Catenacci fails to adequately rule out known risk factors for Decedent's colon cancer, namely his smoking, obesity and diabetes as causes of Decedent's cancer.

Here, "there is simply too great an analytical gap between the data and the opinion proffered." *See GE v. Joiner*, 522 U.S. 136, 146 (1997). For these reasons, Dr. Catenacci's expert causation opinions should be excluded for not satisfying the requirements of Rule 702, 703, 705, and *Daubert*. Defendant further requests any other relief to which it may be justly entitled.

Respectfully submitted,

COZEN O'CONNOR

*/s/ Gregory S. Hudson*
Gregory S. Hudson, *Attorney-in-Charge*
Texas State Bar No. 00790929
Federal Bar No. 19006
E-mail: ghudson@cozen.com
Julia Gandara Simonet
Texas Bar No. 24093470
Federal Bar No. 3207647
E-mail: jsimonet@cozen.com
1221 McKinney St., Suite 2900
Houston, Texas 77010
Telephone: (832) 214-3900
Facsimile: (832) 214-3905

***Attorneys for Defendant, Union Pacific Railroad Company***

## **CERTIFICATE OF SERVICE**

      This is to certify that a true and correct copy of the foregoing instrument has been served on Plaintiff's counsel listed below via electronic mail, the CM/ECF system and/or other means in compliance with the Federal Rules of Civil Procedure, on October 30, 2020.

      Arnold Anderson Vickery
(Email: andy@justiceseekers.com)
Fred H. Shepherd
(Email: fred@justiceseekers.com)
Brian B. Winegar
(Email: brian@justiceseekers.com)
Earl Landers Vickery
(Email: lanny@justiceseekers.com)
VICKERY & SHEPHERD, LLP
10000 Memorial Drive, Suite 750
Houston, Texas 77024-3485

*/s/ Gregory S. Hudson*
Gregory S. Hudson